USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/20/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SUN PHARMACEUTICAL INDUSTRIES, INC.,

Petitioner,

- against -

CIPHER PHARMACEUTICALS, INC.,

Respondent/Cross-Petitioner.

**25 Civ. 8353 (VM)**

**ORDER**

**VICTOR MARRERO, United States District Judge.**

Petitioner Sun Pharmaceutical Industries, Inc. ("Sun") brought this action to vacate in part the Final Arbitration Award dated August 20, 2025, (the "Award," Dkt. No. 6, Ex. 1). The Award was issued by Arbitrator Edna Sussman (the "Arbitrator") in favor of Respondent and Cross-Petitioner Cipher Pharmaceuticals, Inc. ("Cipher") in the arbitration captioned Cipher Pharmaceuticals, Inc. v. Sun Pharmaceutical Industries, Inc., International Institute for Conflict Prevention and Resolution, Case No. G-24-38-AA (the "Arbitration"). (See "Pet. to Vacate," Dkt. No. 1.) Cipher filed a cross-petition to confirm the Award. (See "Cross-Pet.," Dkt. No. 15.) For the reasons stated below, the Court **DENIES** Sun's petition to vacate the Award in part and **GRANTS** Cipher's cross-petition to confirm the Award.

## I. BACKGROUND

A. Factual History

Cipher and Sun (which was preceded by Ranbaxy Laboratories Inc. ("Ranbaxy")) are both pharmaceutical companies. Since 2008 they have had a commercial relationship in connection with the drug, Absorica. (See Pet. to Vacate ¶ 19.) Absorica is an oral prescription medication used to treat acne. Cipher owns and Sun distributes the medication in the United States pursuant to a distribution agreement the parties entered into in 2022 (the "2022 Agreement," Dkt. No. 6, Ex. 5). (See id. ¶¶ 20-21, 43-47.) Before the 2022 Agreement, the parties' relationship was governed by a series of contracts: the 2008 Agreement, the 2012 Agreement, and the 2018 Amendment. (See id. ¶ 20; see also the "2018 Amendment," Dkt. No. 6, Ex. 4; the "2012 Agreement," Dkt. No. 6, Ex. 3; and the "2008 Agreement," Dkt. No. 6, Ex. 2.)

Cipher developed Absorica, and in 2005 sought approval from the U.S. Food and Drug Administration ("FDA") of its Absorica New Drug Application ("NDA")[1]. (Pet. to Vacate ¶ 22.) However, the FDA required Cipher to conduct a Phase 3 clinical study, which assesses the drug's safety, effectiveness, and side effects among different populations. (See id. ¶¶ 23-24.)

[1] A "New Drug Application" or "NDA" is the submission that must be filed with the FDA when applying for approval of a new pharmaceutical drug. See 21 CFR § 314.50. An NDA is required to include numerous categories of information, including clinical study data. See id.

In 2008 Cipher partnered with Ranbaxy, which Sun acquired in 2017, to provide funding for this study. (See id. ¶¶ 25-26.) The 2008 Agreement between Cipher and Ranbaxy provided that, pursuant to FDA regulations, after the first commercial sale of Absorica, ownership of the Absorica NDA would transfer from Cipher to Ranbaxy. (See id. ¶ 27; see also 2008 Agreement § 4.2.) When the Phase 3 clinical study was completed, Cipher submitted the Absorica NDA, which included the clinical study data, to the FDA and the FDA approved it in 2012. (See Pet. to Vacate ¶ 28.)

Following the FDA's approval of Absorica, Cipher and Ranbaxy entered into the 2012 Agreement. (See id. ¶ 29.) As was the case relating to the 2008 Agreement, the Parties again provided that, pursuant to FDA regulations, Cipher would transfer ownership of the Absorica NDA, including all accompanying clinical data and information, to Ranbaxy after the first commercial sale of Absorica. (See id. ¶¶ 34-39.) In November 2012, Cipher notified the FDA by letter that all rights to the Absorica NDA were being transferred to Ranbaxy. (See Award ¶ 39.)

In 2017, Sun acquired Ranbaxy and became its successor in the agreements with Cipher. (See Pet. to Vacate ¶ 26.) In 2018, the parties amended the 2012 Agreement to permit Sun to distribute Absorica LD, a "low dose" version of Absorica, in

the United States in exchange for royalties to be paid to Cipher. (See Award ¶¶ 41-46.)

With the 2012 Agreement set to expire in 2022, Sun and Cipher entered into the 2022 Agreement. (See Pet. to Vacate ¶¶ 43-47.) The 2022 Agreement removed some provisions that pertained to the 2012 Agreement and expressly superseded and terminated all prior agreements. (See id.; see also Award ¶ 98.)

In April 2022, Sun submitted a regulatory application for Absorica LD to Health Canada for approval of the drug in Canada. (See Award ¶ 52.) Sun included data from Cipher's Phase 1 and Phase 3 clinical trials in connection with the Absorica NDA (the "Absorica Data") as part of the application. (See id.) On December 21, 2023, Cipher initiated arbitration proceedings against Sun asserting that Sun breached the 2022 Agreement by submitting Cipher's Absorica Data to Health Canada in connection with Sun's regulatory application for Absorica LD. (See Pet. to Vacate ¶¶ 49-51.) The parties agreed to appoint a single arbitrator and jointly selected Arbitrator Edna Sussman to hear and determine Cipher's claims. (See Award ¶ 14.)

In the arbitration hearings that took place on January 13 through 17, 2025, Cipher argued that it owned the Absorica Data that Sun submitted to Health Canada in support of Sun's

Absorica LD regulatory application, and that Sun's use of the Absorica Data breached the parties' 2022 Agreement. (See id. ¶ 76.) Cipher asserted that the 2022 Agreement provided Sun with a license to use the Absorica Data only for the limited purpose of marketing Absorica in the United States. (See id. ¶ 77.) Sun denied that it breached the 2022 Agreement and argued that the prior 2012 Agreement had unambiguously transferred ownership of all Absorica Data to Sun, such that Sun could use that data for any purpose anywhere in the world. (See id. ¶ 81.)

On August 20, 2025, the Arbitrator issued the Award. The Arbitrator found the key issue was "whether (a) Sun had the right to use the Absorica Data in its submission to Health Canada without Cipher's approval, either by virtue of the 2022 Agreement or because it already owned the Absorica Data, or (b) whether Sun did so in breach of . . . the 2022 Agreement." (See id. ¶ 108.) The Arbitrator found that the parties' agreements were not ambiguous. (See id. ¶ 107.) In examining the 2022 Agreement, the Arbitrator stated that the plain text of the 2022 Agreement did not grant Sun ownership of the Absorica Data. (See id. ¶ 113.)

The Arbitrator then looked at extrinsic evidence, including the 2012 Agreement, 2012 letters from the parties to the FDA, and expert witnesses, to evaluate whether Sun

already owned the Absorica Data before the 2022 Agreement was entered into. (Id. ¶¶ 120-29.) In examining the 2012 Agreement, the Arbitrator found that there was "no dispute that Cipher assigned the NDA to Sun" and that the NDA included the Absorica Data. (Id. ¶ 119.) However, the text of Section 4.2(a) of the 2012 Agreement stated that the transfer of the Absorica NDA would be made "pursuant to 21 CFR 314.72," which is an FDA regulation governing the transfer of ownership of an NDA. (See id. ¶ 118; see also 21 CFR § 314.72.) The Arbitrator interpreted the text of the 2012 Agreement to find "that the assignment of the NDA 'pursuant to 21 CFR 314.72' as provided in Section 4(a) of the 2012 Agreement does not give Sun the right to use the data outside the Territory, the United States." (Award ¶ 131.)

Accordingly, the Arbitrator found that Cipher is the owner of the Absorica Data and that Sun breached the 2022 Agreement by submitting Cipher's Absorica Data to Health Canada to obtain approval for Absorica LD. (See id. ¶ 208.) The Arbitrator awarded Cipher compensatory damages of CAD 4,242,360 for Sun's breach of the 2022 Agreement, as well as USD 2,171,671.45 in attorneys' fees, costs, and expenses. (See id.) Additionally, the Arbitrator found that Cipher is entitled to a 15 percent royalty on Net Sales (as defined in

the 2012 Agreement) of Absorica LD in Canada commencing on January 1, 2026, and ending on December 31, 2040. (See id.)

B. Procedural History

On October 8, 2025, Sun filed a Petition to Partially Vacate Arbitration Award, (Dkt. No. 1), and a Motion to Partially Vacate Arbitration Award, (Dkt. No. 4). Sun also filed a Memorandum of Law in Support of its Petition to Partially Vacate Arbitration Award, (the "Mem. of L.," Dkt. No. 5.), and the Declaration of Andrew T. Hambelton, (Dkt. No. 6). On November 10, 2025, Cipher filed a Cross-Petition for Confirmation of Arbitration Award, (Dkt. No. 15), and a supporting Memorandum of Law in Opposition to Petition to Vacate and in Support of Cross-Petition to Confirm, (the "Opp.," Dkt. No. 16), along with the Declaration of Erica Goldman, (Dkt. No. 17). On November 25, Sun filed a Reply and supporting Declaration. (Dkt. Nos. 22, 23.)

## II. LEGAL STANDARD

"Petitions to vacate an arbitration award are governed by the Federal Arbitration Act ("FAA"). Blackboard Inc. v. Int'l Bus. Machines Corp., No. 21 Civ. 7165, 2022 WL 1807536, at *3 (S.D.N.Y. June 2, 2022). The party seeking to vacate an arbitration award "has the burden of proof, and the showing required to avoid confirmation is very high." STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648

F.3d 68, 74 (2d Cir. 2011). "A court's review of an arbitration award is . . . severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." United Brotherhood of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC, 804 F.3d 270, 274-75 (2d Cir. 2015).

"The FAA provides four statutory grounds for vacatur in situations that involve, generally, impropriety on the part of the arbitrators." Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007).[2] In the Second Circuit, a court may also vacate an arbitration award if it exhibits a "manifest disregard of the law." Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002). "A court may vacate an arbitral award on this ground only if the court finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was

[2] The FAA allows for vacatur: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

well defined, explicit, and clearly applicable to the case." Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 589 (2d Cir. 2016) (citation omitted).

"A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." Weiss v. Sallie Mae, Inc., 939 F.3d 105, 109 (2d Cir. 2019). An award will not be vacated even where there is "serious error," but only where an "arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010) (citation and alterations omitted). Accordingly, courts will uphold an arbitration award so long as "the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract." Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 452 (2d Cir. 2011) (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 222 (2d Cir. 2002)). Based on this high standard, courts have found that "interpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation." Weiss, 939 F.3d at 110.

## III. ANALYSIS

A. Petition to Vacate In Part

Sun seeks to vacate in part the portion of the Award regarding the breach of the 2022 Agreement on the basis that the Arbitrator manifestly disregarded the law by using extrinsic evidence to interpret unambiguous contract language. (See Mem. of L. at 1-3.) Specifically, Sun argues that despite the Arbitrator finding that the 2012 Agreement was unambiguous and that Cipher transferred the Absorica Data to Sun, the Arbitrator impermissibly used extrinsic evidence to impose a territorial limitation on Sun's use of the Absorica Data. (See id. at 18-26.)

Under New York Law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002). "Extrinsic or parol evidence is admissible only if a court finds an ambiguity in the contract." Donohue v. Cuomo, 38 N.Y.3d 1, 13 (2022) (citation omitted). Accordingly, Sun alleges that the Award must be vacated in part because the Arbitrator impermissibly used extrinsic evidence to interpret contract language that was unambiguous, in violation of New York law.

Claims to vacate an award "because of the arbitrator's alleged misapplication of the New York parol evidence rule . . . do not constitute manifest disregard of the law." Giller v. Oracle USA, Inc., No. 11 Civ. 02456, 2012 WL 467323, at *6 (S.D.N.Y. Feb. 14, 2012), aff'd, 512 F. App'x 71 (2d Cir. 2013); see also Wells Fargo Advisors LLC v. Tucker, 373 F. Supp. 3d 418, 434 n.6 (S.D.N.Y. 2019) ("Challenges to an award based on the arbitrator's alleged inappropriate consideration of extrinsic evidence, even where such is found, do not warrant vacatur for manifest disregard of the law."); Perry v. Kingsland Cap. Mgmt. LLC, No. 16 Civ. 4305, 2018 WL 1737237, at *3 (S.D.N.Y. Mar. 20, 2018) ("[The Arbitrator's] interpretation of extrinsic evidence, though not necessary to his holding, does not constitute manifest disregard of the law."); Sempra Energy v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., No. 06 Civ. 6107, 2006 WL 3147155, at *2 (S.D.N.Y. Oct.31, 2006) ("'[M]isapplication of rules of contract interpretation does not rise to the stature of a manifest disregard of law.'" (alterations omitted) (quoting I/S Stavborg v. Nat'l Metal Converters, Inc., 500 F.2d 424, 431 (2d Cir. 1974))).

Here, Sun's request to vacate the Award in part because the Arbitrator allegedly impermissibly used extrinsic evidence in interpreting the parties' unambiguous agreements

is denied because that use does not constitute a manifest disregard for the law. Accordingly, Sun has failed to show vacatur is proper.

Even if misuse of extrinsic evidence constituted a manifest disregard of the law, which it does not, Sun's claim would still fail on the merits. The Court disagrees with Sun that the Arbitrator impermissibly used extrinsic evidence. In the Award, the Arbitrator examined the text of the 2022 Agreement, which was the subject of the arbitration and superseded all prior agreements. (See Award ¶¶ 112-16.) The Arbitrator found that the plain text of the 2022 Agreement did not transfer the ownership of the Absorica Data, subject to two exceptions. (See id.) As relevant here, one exception was that the data's ownership had already been transferred prior to the 2022 Agreement. (See id.) To examine Sun's argument that the data had already been transferred prior to the 2022 Agreement, the Arbitrator looked at extrinsic evidence that included the 2012 Agreement, letters between the parties and the FDA, and expert witness testimony from both parties. (See id. ¶¶ 120-29.) Ultimately, the Arbitrator rested her decision on the text of the 2012 Agreement, stating that the "contract governs." (Id. ¶ 130.) In interpreting Section 4.2(a) of the 2012 agreement, the Arbitrator found that a transfer of the Absorica NDA, which included the

Absorica Data, from Cipher to Sun did not give Sun the right to use the data outside of the United States. (See id. ¶ 131.) This outcome follows because Section 4.2(a) assigned the NDA "pursuant to 21 CFR 314.72," an FDA regulation that the Arbitrator interpreted to establish a territorial restriction on Sun's use of the Absorica Data outside of the United States. (See id.)

Whether the Court agrees with the Arbitrator's contract interpretation or not is irrelevant to the analysis here because, "interpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation." Schwartz, 665 F.3d at 452 (alterations omitted) (quoting Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 25 (2d Cir. 1997); see also T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) ("With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract.").

Here, as described above, the Arbitrator at a minimum provided "a barely colorable justification" of the outcome reached, as the Arbitrator based her analysis on the text of the agreements and her interpretation of the relevant FDA regulation. Schwartz, 665 F.3d at 452 (quoting Westerbeke, 304 F.3d at 222). Accordingly, this is not one of those

"exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." Weiss, 939 F.3d at 109. While Sun disagrees with the Arbitrator's decision, it is not for this Court to disturb the Arbitrator's interpretation of the relevant agreements. Accordingly, Sun's petition to vacate the Award in part is denied.

B. Cross-Petition to Confirm

Cipher cross-petitions the Court to confirm the Award. Under the FAA, "the court 'must grant' the [arbitration] award 'unless the award is vacated, modified, or corrected.'" D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting 9 U.S.C. § 9). Here, Sun moved only to vacate the Award in part, which for the reasons set forth above, the Court denies. Accordingly, the Court confirms the Award.

a. Post-Award, Prejudgment Interest and Post-Judgment Interest

Cipher also seeks statutory interest in addition to the Award. (See Cross-Pet. at 7.) "'New York recognizes two distinct periods of prejudgment interest': pre-award and post-award." Lanesborough 2000, LLC v. Nextres, LLC, 167 F.4th 33, 44 (2d Cir. 2026) (citation omitted) (quoting ExxonMobil Oil Corp. v. TIG Ins. Co., 44 F.4th 163, 179 (2d Cir. 2022). "Unlike pre-award prejudgment interest, post-award prejudgment interest is a statutory requirement that

falls inherently outside an arbitrator's authority and within the authority of the courts." Id. (citation omitted). "Post-award, prejudgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest." Malato v. DigitalOcean LLC, No. 25 Civ. 2319, 2026 WL 686004, at *15 (S.D.N.Y. Mar. 11, 2026) (citation omitted).

Accordingly, Cipher is entitled to post-award, prejudgment interest at the default prejudgment interest rate of nine percent per annum as set by New York law. See id. ("The common practice among courts within the Second Circuit is to grant interest at a rate of nine percent, the rate of pre-judgment interest under New York State law." (citation omitted)); see also N.Y. C.P.L.R. § 5004(a).

The Court also finds that an award of post-judgment interest pursuant to 28 U.S.C. § 1961 is warranted. See Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n, 852 F.3d 217, 223 (2d Cir. 2017) ("Pursuant to 28 U.S.C. § 1961, the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." (citation and alterations omitted)). Thus, Cipher is entitled to post-judgment interest at the statutory rate defined in

Section 1961[3], which shall be calculated from the date this Decision and Order is entered.

b. Attorneys' Fees

Cipher also seeks an award of the attorneys' fees and costs they incurred in litigating the Petition and Cross-Petition. (See Cross-Pet. at 7.) A party seeking an award of attorneys' fees is required to support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see also Tabak v. Lifedaily, LLC, No. 21 Civ. 04291, 2021 WL 5235203, at *6 (S.D.N.Y. Nov. 9, 2021) (a party "seeking to recover cost[s] is required to submit bills or receipts of claimed expenses"). Cipher has not submitted an assessment of their attorneys' fees and costs to support their request. Because Cipher has failed to provide the Court with any basis by which to determine either the amount or reasonableness of their billing rates, hours spent, and litigation costs, their request for attorneys' fees and costs is denied.

## IV. ORDER

[3] The Section 1961 interest rate is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a).

For the reasons stated above, it is hereby

**ORDERED** that the petition and motion (Dkt. Nos. 1, 4) of petitioner Sun Pharmaceutical Industries, Inc. ("Sun") for an order to vacate in part the Final Award (the "Award") dated August 20, 2025, granted in the arbitration captioned Cipher Pharmaceuticals, Inc. v. Sun Pharmaceutical Industries, Inc., International Institute for Conflict Prevention and Resolution, Case No. G-24-38-AA, are **DENIED**; it is further

**ORDERED** that the cross-petition (Dkt. No. 15) of respondent and cross-petitioner Cipher Pharmaceuticals, Inc. ("Cipher") for an order confirming the Award is **GRANTED**; and it is further

**ORDERED** that the confirmed Award is entered as a judgment of this Court, including monetary judgment in favor of Cipher and against Sun in the amount of CAD 4,242,360 in compensatory damages for Sun's breach of the 2022 Agreement and USD 2,171,671.45 in attorneys' fees and expenses associated with the arbitration proceedings; it is further

**ORDERED** that the Court also awards post-award, prejudgment interest at an annual rate of nine percent from the date of the Award - August 20, 2025 - through the date of entry of judgment in this case, on the damages figure of CAD 4,242,360 and on the attorneys' fees and expenses associated with the arbitration of USD 2,171,671.45; it is further

**ORDERED** that pursuant to the confirmed Award, Cipher is also entitled to a 15 percent royalty on Net Sales (as defined in the 2012 Agreement) of Absorica LD in Canada commencing on January 1, 2026, and ending on December 31, 2040; it is further

**ORDERED** that pursuant to the confirmed Award, Cipher is the owner of the clinical studies and data listed in section 5.2 of FDA New Drug Application 21-951; it is further

**ORDERED** that the Clerk of Court award Cipher post-judgment interest that will accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date of entry of this judgment until the judgment is satisfied; and it is further

**ORDERED** that Cipher's request for costs and fees associated with this proceeding is **DENIED.**

The Clerk of Court is directed to dispose of any pending motions and to close this case.

**SO ORDERED.**

Dated: 20 August 2026
New York, New York

Victor Marrero
U.S.D.J.